Filed 6/30/14  P. v. Lavery CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039778 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. F23525) |
| v. | |
| JAMES ROBERT LAVERY, | |
| Defendant and Appellant. | |

Defendant James Robert Lavery appeals from an order denying his motion under Penal Code section 1538.5, subdivision (m) to suppress controlled substances seized from a fanny pack during an investigatory detention.  Defendant contends that the trial court erred by finding that he lacked standing to assert a Fourth Amendment expectation of privacy in the fanny pack.  He argues further that the fanny pack search was not supported by probable cause.  For the reasons explained below, we will affirm the judgment.

## I.  FACTS[1] AND TRIAL COURT PROCEEDINGS

On September 14, 2012, Lieutenant Larry Richard, a twelve-year veteran with the City of Santa Cruz Police Department, responded to a dispatch in the Harvey West area of Santa Cruz.  Richard knew that area for its drug activity, having made previous arrests

---

[1] The facts are drawn from the hearing on defendant's motion to suppress.

there for possession of heroin, methamphetamine, and other illegal drugs. The dispatch concerned a street disturbance involving yelling and screaming among five people, including one person on a bicycle and another person associated with a white truck with a red camper shell. The dispatch also indicated that the subjects possibly were dealing drugs, "handing small stuff to a subject in a white pickup with a red camper shell."

Finding no one at the referenced location, Richard drove through the area and spotted a white pickup truck with a red camper shell parked a few blocks away, at Encinal and Dubois Streets. Richard also noticed three people crouched behind a garbage can near a picnic table across the street from the truck, at 399 Encinal Street. It was after 9 p.m. and the business at that address was closed. The group appeared to be hiding, "not looking to be seen, especially when there's a marked patrol car right there at the intersection." Richard believed the group was involved in illegal drug activity.

Richard stepped out of his patrol car, announced himself, and told the subjects, who had started to walk in two directions, to come to him. The group—one female and two males including defendant—complied. Richard directed the group to sit on the sidewalk as a second officer, Matthew Mulvihill, arrived at the scene. After the three verbally identified themselves, Richard left Mulvihill with the group and walked to the garbage can to see if anyone had left anything behind. Richard found a black fanny pack on the ground next to the garbage can. He returned to the group with the fanny pack in hand, and turned over the investigation, including the fanny pack, to Officer Mulvihill.

Mulvihill showed the fanny pack to the group and asked whom it belonged to. All three denied ownership. When Mulvihill told the group he was going to search the pack to find out whom it belonged to, defendant said the pack belonged to him. Mulvihill searched the pack. First he found documents containing defendant's name and date of birth. His continued search uncovered drugs and drug paraphernalia. Before searching the pack, Mulvihill had verified that defendant was the registered owner of the white truck.

2

After the officers testified, defendant conceded that he had been lawfully detained. But he argued that probable cause did not support the fanny pack search because the officers observed no drug activity as part of their investigation. Further, defendant asserted that he did not relinquish his Fourth Amendment rights by abandoning the fanny pack because he reclaimed the pack before it was searched. Thus, even if there was an ownership issue, which defendant did not concede, the search should have ended when Mulvihill found the identifying documents because at that point it was clear that the pack indeed belonged to defendant.

The trial court denied defendant's motion to suppress the drugs and drug paraphernalia found in the fanny pack, agreeing with the prosecutor that the fanny pack had been abandoned and defendant could not assert a Fourth Amendment expectation of privacy over the pack by reclaiming it before it was searched.

Following the denial of the suppression motion, defendant pleaded guilty to one count of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a).) The court suspended imposition of sentence for three years and placed defendant on formal probation. Defendant timely appeals from the order denying his suppression motion, asserting (1) the trial court erred by concluding that he permanently relinquished his expectation of privacy in the fanny pack by abandoning it next to the garbage can, and (2) the search was not supported by probable cause.

## II. DISCUSSION

We review the evidence in a light most favorable to the trial court's ruling on a motion to suppress. (*People v. Long* (1987) 189 Cal.App.3d 77, 82.) When the evidence is uncontroverted, as it is here, we face a pure question of law, and we exercise our independent judgment to determine whether, on the facts presented, the search and seizure was reasonable under the Fourth Amendment to the United States Constitution. (*Ibid.*; *People v. Leyba* (1981) 29 Cal.3d 591, 596–597.)

3

Probable cause to search exists "where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found." (*Ornelas v. United States* (1996) 517 U.S. 690, 696.) Probable cause is a flexible, common sense standard, requiring "[a] 'practical, nontechnical' probability that incriminating evidence is involved . . . ." (*Texas v. Brown* (1983) 460 U.S. 730, 742.) The standard does not demand a showing that a belief be more likely true than false. (*Ibid*.) Probable cause is less than proof beyond a reasonable doubt, less than a preponderance of the evidence, and less than a prima facie showing. (*People v. Tuadles* (1992) 7 Cal.App.4th 1777, 1783, citing *Illinois v. Gates* (1983) 462 U.S. 213, 235.) Probable cause refers to "a state of facts as would lead a [person] of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused." (*People v. Uhlemann* (1973) 9 Cal.3d 662, 667.)

Although a warrantless search may not be based wholly on information provided anonymously, that information is relevant to the issue of probable cause. (*Willson v. Superior Court* (1956) 46 Cal.2d 291, 294.) Other evidence presented to the court may support the conclusion that reliance on the information was reasonable. (*Ibid*.)

The totality of the circumstances supports a probable cause determination here. The dispatch reported possible drug dealing involving five subjects, with a subject in a white truck with a red camper shell handed something small. The location of the dispatch—the Harvey West area of Santa Cruz—was known for illegal drug activity. The record does not tell us the source of the dispatched information; specifically, we do not know whether the reporting party identified himself or herself to the police or gave information making the report inherently reliable. (*People v. Ramey* (1976) 16 Cal.3d 263, 269 ["[A]s a general proposition[, ] private citizens who are witnesses to or victim of a criminal act, absent some circumstance that would cast doubt upon their information, should be considered reliable."].) Because the record does not establish the reliability of the dispatched information, we agree with defendant that the information does not *by*

4

*itself* provide probable cause for the search. However, contrary to defendant's argument, the dispatched information was corroborated by other facts establishing probable cause to search the fanny pack.

The white truck was found in the Harvey West area of Santa Cruz within blocks of the dispatched location. Lieutenant Richard observed the defendant and two others hiding in front of a business that was closed. The group appeared to disperse at the sight of the lieutenant, who arrived at the location in a marked police vehicle. Although the group complied with the lieutenant's directive to walk to his location, a fanny pack remained where the group had been hiding. The hiding, followed by the group's dispersal and the discovery of an apparently abandoned pack, all taking place in an area known for drug activity and near the truck identified in the police dispatch as the hub of a drug transaction, would lead a person of ordinary prudence to strongly suspect that illegal drugs may be in the pack. This suspicion was only heightened when defendant told Officer Mulvihill that the truck belonged to him and when all three denied ownership of the pack. We therefore conclude that the fanny pack search was supported by probable cause. In light of this conclusion, we do not reach the abandonment issue presented by this case.

## III. DISPOSITION

The judgment is affirmed.

_____

Grover, J.

**WE CONCUR:**


_____

Manoukian, Acting P.J.


_____

Mihara, J.